IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PRESTIGE LAND IRAN CO., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3734-L-BK |
| | § | |
| HILTI, INC., | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the *Order of Reference*, Doc. 80, and 28 U.S.C. § 636(b)(1)(B)&(C), Defendant's *Motion for Summary Judgment*, Doc. 39, is now before the Court for findings of facts and a recommended disposition. For the reasons stated herein, Defendant's motion should be **GRANTED**.

**A.   Background**

This is a civil action arising out of a product liability claim brought by Plaintiff Prestige Land Iran, Co. against Defendant Hilti, Inc. Doc. 7 at 1. Plaintiff is an Iranian company that manages and owns the Isfahan City Center ("the ICC") in Iran. Doc. 7 at 3. Defendant is the exclusive distributor of Hilti products in the United States.

The parties do not dispute the incident at the center of this lawsuit. In January 2013, Plaintiff purchased a Pipe Support System ("the PSS"), which was composed of various components and designed to suspend industrial pipes from the ceiling of the ICC's parking garage. Doc. 39 at 1; Doc. 44 at 1. In May 2015, the PSS failed, causing the entire system of pipes to collapse onto the vehicles parked below. Doc. 39 at 1; Doc. 44 at 2. The parties' positions on Defendant's role in the incident, however, differ markedly.

In its *First Amended Complaint*, Plaintiff alleges that Defendant was heavily involved in the PSS project, to-wit: it allegedly visited the ICC; recommended the installation of the PSS; and designed, developed, manufactured, tested, packaged, advertised, promoted, marketed, distributed, labeled, and/or sold the PSS and its component parts. Doc. 7 at 1-3. However, since the inception of this lawsuit, Defendant has maintained that it had no part in the events that undergird it, and that Plaintiff has sued the wrong party. *See, e.g.,* Doc. 14 at 5, 7; Doc. 18 at 2; Doc. 31 at 1; Doc. 33 at 1. Specifically, Defendant contends that it only does business in the United States and, thus, had nothing to do with the Iranian PSS project. Doc. 39 at 7. Defendant further avers that Plaintiff's dealings were with a different Hilti AG-affiliated company located in Iran—the Madavi Company ("Madavi"). Doc. 39 at 7.

Plaintiff is suing Defendant for design defect, manufacturing defect, marketing defect/failure to warn, negligence, and gross negligence. Doc. 7 at 4-11. Defendant moves for summary judgment on each of Plaintiff's claims, asserting, *inter alia*, that Plaintiff simply has no proof that Defendant is the party liable for the injuries Plaintiff alleges. Doc. 44.

**B.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a fact is "material" is determined by the substantive law governing the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A moving party has the initial burden of

2

proving there is no evidence to support one or more essential elements of the nonmoving party's claim. *Celotex*, 477 U.S. at 323-25. Where, as here, the nonmoving party bears the burden of proof at trial, the moving party need only point out the mere absence of evidence supporting the nonmoving party's case. *Id.* at 325; *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991). Once the moving party carries its burden, the nonmoving party must come forward with "specific facts" that demonstrate the existence of a genuine factual issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 313 (5th Cir. 2003) (citations omitted). Nonetheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.

**C.   Arguments**

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that Plaintiff has no evidence to establish the necessary elements. Doc. 39 at 7-10. Fatal to each claim, Defendant argues, is Plaintiff's failure to present evidence "that Defendant ha[d] any involvement in any aspect of the ICC Project or [the PSS]." Doc. 39 at 7. In

response, Plaintiff contends, *inter alia*, that Defendant's involvement is evidenced by (1) the fact that Defendant sells a type of component "substantially similar" to one allegedly used in the PSS; (2) components sold to Plaintiff are "actively sold as Plaintiff's [sic] products on Hilti US [sic] website;" (3) Plaintiff's projects director avers that Hilti engineers and Madavi representatives told him that a component used in the PSS was "designed in the United States and manufactured according to United States' standards;" and (4) a certificate of compliance for the same type of component used in the PSS shows that the component was submitted for compliance testing in the United States at Defendant's request. Doc. 44 at 8. In reply, Defendant, *inter alia*, lodges numerous objections to evidence offered by Plaintiff in support of its summary judgment response,[1] and argues that, even if proper, Plaintiff's evidence still fails to show that Defendant was involved in any way with the PSS project in Iran. *See* Doc. 47.

It is readily apparent that the Court need not consider Plaintiff's evidence, or the lack thereof, as it relates to each element of each cause of action alleged. That is because establishing Defendant's responsibility for the injuries alleged is critical to all of Plaintiff's claims, and a review of the evidence makes clear that Defendant simply cannot do so.

---

[1] Since exclusion of the evidence would not affect the Court's analysis or conclusion that Defendant is entitled to summary judgment on all of Plaintiff's claims, Defendant's evidentiary objections are not addressed for the sake of judicial economy.

**D.     Analysis**

"Under Texas products liability law, every plaintiff is required to establish that the product that caused an injury had been manufactured, designed, or distributed by the defendant whom he or she sues." *Garcia v. Pfizer, Inc.*, 268 F. App'x 270, 272 (5th Cir. 2008) (per curiam) (citing *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989); *In re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990)).  Thus, for a products liability claim to survive summary judgment, the plaintiff must introduce "evidence of probative force" that the defendant's product caused the injury alleged. *Alarcon v. Alcolac Inc.*, 488 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (quoting *Welch v. Coca-Cola Bottlers' Assoc.*, 380 S.W.2d 26, 30 (Tex. App.—Eastland 1964, no pet.)).  "It is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (citation omitted).

Defendant asserts that Plaintiff lacks any evidence that Defendant designed, manufactured, marketed, or sold the PSS, because its dealings were with Madavi, not Defendant.  Doc. 39 at 7; *Celotex*, 477 U.S. at 325.  Upon Defendant pointing out this lack of evidence, the burden shifted to Plaintiff to set forth "specific facts" showing a genuine issue for trial.  *Matsushita*, 475 U.S. at 587.  However, the evidence and argument Plaintiff presents, outlined above, fails to satisfy this burden.

First, the fact that Defendant sells a component "substantially similar" to one used in the PSS is irrelevant.  Logically, a "substantially similar" component is not the same component.  *Barajas*, 927 S.W.2d at 613.  Second, even if Defendant sells the same types

5

of components that were used in the PSS, Plaintiff presents no evidence that Defendant sold to it the exact components that were actually used in the PSS. *See Garcia*, 268 F. App'x at 272-73 ("[T]o survive a motion for summary judgment, it was not sufficient for [the plaintiff] to introduce evidence that the Defendants distributed [the pharmaceutical drug at issue] in Texas in 1970. Instead [plaintiff] must have adduced evidence that Defendants supplied *the specific doses* that allegedly caused her injury.") (emphasis added).

Also insufficient is Plaintiff's allegation that the type of component used in the PSS was designed in the United States and in accordance with its safety standards, as there is no indication that Defendant played any role in this process. Plaintiff's contention that Defendant was involved amounts to unsupported speculation that is not competent summary judgment evidence. *Nuwer*, 332 F.3d at 313. Finally, Plaintiff does not explain how Defendant's submission of <u>a type</u> of component used in the PSS for testing implicates Defendant in the design, manufacture, marketing, or sale of the actual component used in the PSS. *Garcia*, 268 F. App'x at 272-73; *see Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise matter in which the evidence supports his or her claim."). In fact, the Certificate states that the type of component was manufactured in China by Hilti China, Ltd. *See* Doc. 44-1 at 22.

While Plaintiff contended that additional evidence of Defendant's involvement would be developed at the deposition of Defendant's corporate representative, which was scheduled after its summary judgment response deadline, that does not appear to have

6

been the case. Doc. 44 at 8. Indeed, Schofield's subsequent deposition testimony underscores Defendant's lack of involvement in the design, manufacture, marketing, and sale of the PSS, as well as Defendant's lack of contact with Plaintiff prior to this lawsuit. For instance, he testified that (1) Defendant does not sell products outside the United States or its territories, Doc. 63-5 at 3, 6, 8; (2) prior to initiation of the lawsuit Defendant did not design or manufacture any Hilti products, Doc. 63-5 at 3, 8; (3) Defendant has never received documents from or communicated with Madavi, Doc. 63-5 at 9; (4) Madavi is the exclusive distributor of Hilti products in Iran, Doc. 63-5 at 11; (5) Hilti AG, Defendant's parent company, is responsible for the design of the products it supplies to Defendant, Doc. 63-5 at 3; (6) Defendant does not sell the product associated with the certificate of compliance that Plaintiff alleges was used in the PSS, Doc. 63-5 at 4-5; (7) Defendant was not involved in the design of the PSS, Doc. 63-5 at 16; and (8) Defendant has never undertaken any design project in the Middle East, Doc. 63-5 at 17.

  In fact, Plaintiff's summary judgment evidence negates its assertions that Defendant had a role in the PSS project, and is replete with references to Madavi. For example, Plaintiff offers the June 2015 report on the PSS collapse compiled by the Official Expert of Justice Administration of Esfahan Province. *See* Doc. 44-1 at 12-16. The report identifies Madavi as the supplier and designer of the connection components, and discusses communications between Madavi and the PSS project's main contractor regarding installation of the PSS. Doc. 44-1 at 13-14. It further notes that the contract for the installation of the PSS was between Plaintiff and Madavi only, and that Madavi representatives inspected connection components during the construction process. Doc.

7

44-1 at 14. In fact, nowhere in the extensive report does Defendant's name appear. Additionally, a confirmation letter identifies Madavi as "the exclusive representative of Islamic Republic of Iran for products and services of Hilti Corporation, 9494 Schaan, Liechtenstein, Feldkircherstrasse 100," and states that Madavi is "responsible for marketing, sales and after sales services of all Hilti manufactured products including . . . anchoring systems[ and] installation systems." Doc. 44-2 at 4.

Even when viewing all facts and inferences in its favor, Plaintiff fails to present "evidence of probative force" that Defendant played any role in the design, manufacture, marketing, or sale of the PSS or that it bears any responsibility for Plaintiff's alleged injuries. *Alarcon*, 488 S.W.3d at 819; *Matsushita*, 475 U.S. at 587. In attempt to establish Defendant's involvement in the PSS project, Plaintiff offers only the kind of "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation" held insufficient to defeat a motion for summary judgment. *Nuwer*, 332 F.3d at 313.

Because Plaintiff has not demonstrated a genuine issue of fact as to whether Defendant designed, manufactured, marketed, or sold the products that allegedly caused its injuries, all of Plaintiff's claims fail. *See Gaulding*, 772 S.W.2d at 68 ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); *Barajas*, 927 S.W.2d at 615 (finding plaintiffs' negligence claim failed at summary judgment where defendant did not design, manufacture, or sell the product in question, and thus owed no duty to plaintiffs); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, no pet.) ("[A] finding of ordinary negligence is prerequisite to a finding of

8

gross negligence.") (citation omitted).  Accordingly, summary judgment in Defendant's favor is warranted.

## IV. CONCLUSION

In light of the foregoing, Defendant's *Motion for Summary Judgment*, Doc. 39, should be **GRANTED** and Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on September 7, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See* Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE